IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBIN RHODES

    PLAINTIFF

V.    CASE NO. 4:16CV00433 SWW

CENTRAL ARKANSAS
REHABILITATION ASSOCIATES,
L.P., d/b/a ST. VINCENT
REHABILITATION HOSPITAL

    DEFENDANT

# OPINION AND ORDER

Plaintiff Robin Rhodes ("Rhodes"), who is black, brings this employment discrimination action against her former employer, Central Arkansas Rehabilitation Associates, L.P., doing business as St. Vincent Rehabilitation Hospital ("SVR"). Rhodes charges that SVR terminated her employment because of her race and gender and in retaliation for complaining about racial and sexual harassment. Before the Court is SVR'S motion for summary judgment [ECF Nos. 15, 16, 17], Rhodes's response in opposition [ECF Nos. 20, 21, 22], and SVR's reply [ECF No. 26]. After careful consideration, and for reasons that follow, the motion is granted.

## I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

1

of law." Fed. R. Civ. P. 56(a).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II. Background

The following facts are undisputed and taken largely from the parties' statements of undisputed material facts.[1]  In October 2014, SVR hired Rhodes to work as a rehabilitation nursing technician ("RNT").  Rhodes's job duties included tasks related to patient care, such as taking vital signs, assisting patients to the bathroom, and transferring patients from a wheelchair to a bed, or to a toilet.

---

[1] Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried.  "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1(c).

On November 23, 2014, a patient complained that Rhodes was rude to him when he requested assistance going to the bathroom. A nursing supervisor named Nathan Haley ("Haley") counseled Rhodes about the patient's complaint and proper patient care and then assigned another RNT to care for the patient. In an email message to SVR's Chief Nursing Officer ("CNO"), Shannon Moreno-Cook, Haley opined that he did not think the incident warranted a write up but that he "wanted it on the record [that] Robin was educated [about] our . . . expectations."[2]

In February 2015, Vanessa Barnett ("Barnett") assumed the position of CNO, which gave her supervisory authority over Rhodes. In deposition, Barnett recalled that on March 12, 2015, she counseled Rhodes regarding complaints submitted by two patients, who claimed that Rhodes had mistreated them. Barnett acknowledges that she did not document a March 12, 2015 meeting with Rhodes,[3] and Rhodes denies that the aforementioned patient complaints and counseling meeting occurred. Rhodes does however acknowledge that on a date she does not recall, Barnett talked to her about a patient who had complained that Rhodes rushed her in getting dressed.

On April 6, 2015, Rhodes called Barnett and complained about the conduct of a white, male nurse named Michael Davis ("Davis"), who was working for a staffing agency that had assigned him SVR. Rhodes told Barnett that Davis had slapped her buttocks with a clipboard, and when he noticed that Rhodes had been eating milk duds, Davis stated, "Oh, I see you like chocolate balls in your mouth."[4] Pursuant to Barnett's

---

[2] ECF No. 15-1, at 71; Rhodes Dep., Ex. #11.
[3] ECF No. 15-2, at 16; Barnett Dep., at 61.
[4] ECF No. 20-1, at 3 .

3

instructions, Rhodes recorded her complaint in writing and delivered it to Barnett and the human resource director, Jeanne Roon ("Roon").[5] On Roon's advice, Barnett called the staffing agency that employed Davis and instructed that Davis should not return to SVR.

On April 9, 2015, Barnett received an email message titled "Robin Rhodes" from SVR nursing supervisor Jamie Clark ("Clark").[6] Clark's message stated that an RN named Kelli reported that she found a crying patient, who said that Rhodes had been rough with her. According to Clark's message, Kelli also stated that Rhodes had neglected her job duties and had quarreled with a coworker. Clark told Barnett that she met with Rhodes about Kelli's report and that Rhodes denied that she had mistreated a patient and opined that Kelli was young, dumb, and gossiped too much.

By letter dated April 15, 2015, RN Tracie Brown, an staffing agency nurse assigned to work at SVR, wrote Barnett the following letter:

> At 2130 [patient] complained to me about Robin when I came into her room to give her medication. Her night shirt was under her breast and the sheets were all off her and pulled below her feet. She had Attends [diapers] on that [were] very large and not closed. She was so upset that even before I could fully enter her opened door[,] she begged and pleaded saying, "Please help me. Please, I would rather lay here all night in pee than to put my call light on again and call Robin. Well look at me. Look how she left me. My diaper is all in shambles." She said Robin was very rude and bossy to her. She then told me after asking my name that if I said anything she would deny it. I told her that I had to report what she said. I went and got Jamie RN and explained what was said. [Patient] denied it to Jamie saying just agree not to say anything and come see her at the end of the shift. "Maybe she was just having a bad day." Patient said she didn't want to get [anyone] fired.

---

[5] ECF No. 15-1, at 17 and Ex. #9.
[6] *See* ECF No. 15-2, at 13, 27, Ex. #8.

4

On April 16, 2015, Barnett gave Rhodes written notice that she was on probationary status for a period not to exceed 90 days and that unsatisfactory progress during the probationary period could result in her termination.[7] The written notice set forth the reasons for Rhodes's probation as follows:

> Patient complaint received reporting Robin was rude to her when she asked [for] assistance turning in bed due to discomfort. Patient reports [that] Robin stated[,] "I just turned you over five minutes ago." Two patient complaints were received previously regarding Robin being rude to patients[,] and she and I spoke about this in a private meeting.[8]

Under the heading "Corrective Action Plan," the notice reads: "Robin will be courteous to patients when caring for them and ask for assistance when necessary."[9]

In a June 8, 2015 email to Barnett and Roon, SVR nursing supervisor Jackie Kassler ("Kassler") reported that two patients, who were roommates, complained that the RNT assigned to their room on June 5 and 6 had mistreated them. Kassler stated that she spoke with both patients, and she identified Robin Rhodes as the RNT assigned to the room at the time in question. Kassler stated that one patient told her that Rhodes became very impatient and "jerked" her and that the family of the other patient, a confused amputee who needed extra time to process requests, was very upset and requested that Rhodes never care for their loved one again.

On June 18, 2015, Roon notified Rhodes by phone that her employment at SVR had ended. A form documenting Rhodes dismissal states the reason for her termination as follows:

---

[7] ECF No. 15-2, at 28-29, Ex. #10.
[8] ECF No. 15-2, Ex. #10.
[9] *Id*.

A complaint was made by patients in 214A & B regarding their care the night [of] June 5 into June 6. The patients state that they were spoken to poorly by their tech[,] who told them to "scoot up" in bed repeatedly and that the tech was "rushing and jerking around." 214A reports this is not the first time they have had this treatment by their tech, Robin. This is the fifth patient complaint regarding rough treatment made against Robin. In November, a patient complained about rude behavior regarding his requests for assistance to the bathroom. A Press Ganey survey mentions Robin was "very rough with me, jerking my arm."[10]

### III. Discussion

SVR moves for summary judgment, asserting among other things that it terminated Rhodes's employment for legitimate, non-discriminatory and non-retaliatory reasons.

**<u>Wrongful Termination</u>**

Rhodes's complaint and responsive brief clearly indicate that she brings her race and sex discrimination claims under a disparate treatment, not a hostile environment, theory.[11] Accordingly, Rhodes shoulders the burden to show, with circumstantial or direct evidence, that the decision to terminate her employment was motivated by race

---

[10] ECF No. 15-1, Ex. #18.
[11] If Rhodes were proceeding under a hostile environment theory, her claims would fail. To hold an employer liable for a racially or sexually hostile work environment, the aggrieved employee must show: (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected-group status; and (4) the harassment affected a term, condition, or privilege of employment. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999). To be actionable, an allegedly hostile work environment must be both objectively and subjectively offensive--one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 2283 (1998)(setting forth standards to evaluate claims of hostile work environment based upon sexual harassment); *see also Gipson v. KAS Snacktime Co.*, 171 F.3d 574, 578 (8th Cir. 1999)("The same standards are generally used to evaluate claims of hostile work environment based upon sexual harassment and racial harassment."). In determining whether sufficient evidence of a hostile work environment has been presented, the totality of the circumstances must be considered, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *See Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 2007 WL 1201867, *3 (8th Cir. April 25, 2007)(citing *Duncan v. General Motors Corp.*, 300 F.3d 928, 884 (8th Cir. 2002)). Here, the complained-of conduct involves a single incident that falls far short of harassment that is so severe or pervasive as to affect a term, condition, or privilege of employment.

and/or sex discrimination. Direct evidence of discriminatory motivation is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the employer's decision. *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997). Circumstantial evidence, on the other hand, requires an additional inferential step before one can find that unlawful discrimination was present.

Rhodes contends that the record provides "compelling direct evidence of discrimination, including retaliation,"[12] and she enumerates several examples of what she insists qualifies as direct evidence of discrimination. First, Rhodes points to her own deposition testimony in which she recalled that early in her employment, Barnett told her she had "strong field hands." According to Rhodes, Barnett's comment was obviously bigoted and a direct reference to the history of slavery. She states, "[T]here is a direct . . . link between Barnett's 'field hands' statement and the reason for terminating Plaintiff: to protect Davis who shared similar views."[13] To the contrary, Rhodes has not shown a specific link between Barnett's alleged comment and the decision to terminate Rhodes's employment.

---

[12] ECF No. 20, at 7. The Court notes that Title VII prohibits retaliation and discrimination as two distinct and separate wrongs, and adverse employment action taken in retaliation for protected activity is not equivalent to or direct proof of status-based discrimination. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522, 186 L. Ed. 2d 503 (2013)(noting that status-based discrimination and employer retaliation for protected conduct are separate categories of conduct prohibited by Title VII).
[13] ECF No. 20, at 8.

7

Second, Rhodes claims that Roon urged Barnett to "backdate" a patient's complaint about Rhodes to make it appear that it came before Rhodes complained about Davis. Even if such evidence were present, it would not provide direct evidence of race or sex discrimination.

Third, Rhodes claims that after Roon terminated her employment, she hired Davis and continued to protect him from other employees' sexual harassment claims. Rhodes argues that "Defendant favored and protected Davis and discriminated against those who exposed Davis's misdeeds."[14] The Court perceives no direct relationship between conduct aimed at protecting Davis and a motivation to discriminate against Rhodes based on her race or gender.

Fourth, Rhodes offers the affidavit of Debra Ramsey, a former SRV employee. Ramsey testifies that during her employment at SRV, she and several female employees complained that Davis had sexually harassed them and that Roon refused to take any action against Davis. Ramsey also opines that generally, SRV gives male employees preferential treatment. Ramsey's testimony fails to provide a specific link between the discriminatory animus alleged in this individual case and Rhodes's termination.

Given the absence of evidence that directly points to the presence of a discriminatory motive, Rhodes's wrongful termination claim is properly analyzed under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). Normally, part one of that framework requires that the plaintiff establish a prima

---

[14] ECF No. 20, at 9.

facie case of discrimination.[15] However, SRV has presented evidence that Barnett and Roon terminated Rhode's employment based on multiple reports that Rhodes had mistreated patients. Because SVR offers a legitimate, nondiscriminatory reason for ending Rhodes's employment, the Court will assume the existence of a prima facie case and move directly to the issue of pretext.[16]

In order to survive summary judgment, Rhodes must present evidence sufficient to create a jury question as to whether the stated reason for her termination is merely pretext to hide race and/or gender discrimination. Specifically, Rhodes must (1) discredit SVR's asserted reason and (2) show that the circumstances permit a reasonable inference that race and/or gender was the real reason for her termination. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

Rhodes argues that SVR began collecting and documenting negative reports regarding her performance only after she complained that Davis had subjected her to racial and sexual harassment. But it is undisputed that nursing supervisor Haley counseled Rhodes about a patient complaint less than one month after her hire, and he documented the incident in an email message to Barnett. There is simply no evidence that SVR manufactured or fabricated negative reports regarding Rhodes's job performance, or that her supervisors documented such reports only after Rhodes

---

[15] A plaintiff makes out a prima facie case by showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004).

[16] [I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext and the determinative issue of causation when bypassing the prima facie case analysis leads to clarity in framing the issue under review." Stewart v. Independent School Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007).

complained about Davis. Rhodes denies that she committed the conduct set forth in patient complaints and reports, but the important question is whether Barnett and Roon believed that Rhodes had engaged in conduct meriting her termination, and the undisputed facts indicate that they did. *See Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

Rhodes next contends that SRV favored Davis and protected him from her complaint against him, and they discriminated against her because she exposed Davis's misdeeds. Although instances of disparate treatment can support a claim of pretext, Rhodes has the burden to show that she and the more favorably treated employee were "'similarly situated in all relevant respects.'" *Harvey v. Anheuser-Busch, Inc*., 38 F.3d 968, 972 (8th Cir. 1994)(citing *Jones v. Frank*, 973 F.2d 673, 676 (8th Cir.1992)(quoting *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir.1988)). Here, Davis was an RN, who worked for a staffing agency, and there is no evidence that he was the subject of patient complaints.

Viewing the record in a light most favorable to Rhodes, the Court finds that she has failed to create a jury question on the issue of pretext. Accordingly, SVR is entitled to summary judgment on Rhodes's race and gender discrimination claims.

**Retaliation**

Rhodes charges that SVR terminated her employment in retaliation for the complaint she submitted on April 6, 2015, charging that Davis subjected her to racial and sexual harassment. Because SRV has come forward with a non-retaliatory reason for terminating Rhodes's employment, she shoulders the burden to present evidence that

10

"'(1) creates a question of fact as to whether [SVR's] reason was pretextual and (2) creates a reasonable inference that [SVR] acted in retaliation.'" *Stewart v. Independent School Dist. No*. 196, 481 F.3d 1034, 1043 (8th Cir. 2007)(quoting *Logan v. Liberty Healthcare Corp*., 416 F.3d 877, 880 (8th Cir. 2005)). Rhodes contends that the timing of her termination, which came two months after she lodged the complaint against Davis, is sufficient to create questions for trial. The Court disagrees. The timing of adverse employment action may be sufficient to establish a causal connection between protected activity and adverse employment action, which is necessary to make out a prima facie case of retaliation. As explained above, even assuming the existence of a prima facie case, Rhodes has failed to rebut SVR's proffered reason for her termination. Accordingly, no issues for trial exist as to Rhodes's wrongful termination claims, whether based on status-based discrimination or retaliation. *See Putman v. Unity Health System,* 348 F.3d 732, 737 (8th Cir. 2003)(affirming dismissal of retaliatory termination claim when plaintiff failed to show that employer's nondiscriminatory reason for the termination was pretextual); *see also See Jackson v. St. Joseph State Hosp*., 840 F.2d 1387, 1391 (8th Cir. 1988)(noting that anti-retaliation provisions do "not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers.").

## IV.

For the reasons stated, the Court finds that Defendant's motion for summary judgment [ECF No. 15] should be and it is hereby GRANTED.  Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 11TH  DAY OF SEPTEMBER, 2017.

/s/Susan Webber Wright  
UNITED STATES DISTRICT JUDGE
